UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MENG HAN TSAI,

Petitioner,

- against -

RAUL MALDONADO JR., *in his official capacity as Warden, Metropolitan Detention Center Brooklyn, et al.*,

Respondents.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-5517 (PKC)

PAMELA K. CHEN, United States District Judge:

On September 4, 2026, Meng Han Tsai filed a petition for a writ of habeas corpus to challenge the lawfulness of his detention stemming from his arrest on August 10, 2026 by U.S. Immigration and Customs Enforcement ("ICE"). For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately and no later than 5:00 p.m. ET on Wednesday, September 16, 2026, unless Respondents file a motion with the Court by 11:00 a.m. ET on Wednesday, September 16, 2026 requesting that the Court hold a bond hearing at which Respondents will bear the burden to demonstrate Petitioner is a flight risk.

## BACKGROUND

Petitioner is a native and citizen of Taiwan who entered the United States on April 27, 2022 via the nonimmigrant Visa Waiver Program ("VWP"), which authorized Petitioner to remain in the United States without a visa for up to ninety days. (Decl. Crystal Harris ("Harris Decl."), Dkt.

6-1, ¶¶ 3–5.)[1] That period expired in July 2022, but Petitioner has remained in the United States. (*Id.*) An individual entering the United States pursuant to the VWP waives any right to later "contest, other than on the basis of an application for asylum, any action for removal of the [individual]." 8 U.S.C. § 1187.

On August 10, 2026, ICE received a referral from the Transportation Security Administration, indicating that Petitioner would be present that day at John F. Kennedy International Airport ("JFK Airport") Terminal 4, and ICE subsequently issued a Form I-200 Warrant for Arrest of Alien ("Form I-200") for Petitioner's arrest. (*Id.* ¶¶ 7–8.) Later that day, ICE officers observed Petitioner at JFK Airport, arrested him, and transported him to 26 Federal Plaza, New York, New York for processing. (*Id.* ¶¶ 9–10.) During processing, ICE served Petitioner with a VWP Notice of Intent to Issue a Final Administrative Removal Order ("VWP Notice"),[2] and later that day, issued a VWP Final Administrative Removal Order ("FARO").[3] (*Id.* ¶¶ 11–12.)

---

[1] Respondents filed all of their exhibits within the document docketed at Dkt. 6-1. Accordingly, where citing paragraphs, the Court is referencing and citing to the Harris Declaration, whereas when citing to other exhibits within Dkt. 6-1, the Court cites to page numbers.

[2] The VWP Notice set forth that: (a) Petitioner was admitted to the United States on April 27, 2022, as "a nonimmigrant VWP with authorization to remain in the United States for a temporary period"; (b) Petitioner had remained in the United States beyond the expiration of the time permitted under the VWP; and (c) Petitioner was subject to removal pursuant to "Section 237(a)(1)(B) of the Immigration and Nationality Act" (the "INA") because he had "remained in the United States for a time longer than permitted, in violation of the INA or any other law of the United States." (Harris Decl., Dkt. 6-1, ¶ 11.)

[3] The FARO outlined that the U.S. Department of Homeland Security ("DHS") had determined that: (a) Petitioner was admitted to the United States under the VWP as a nonimmigrant visitor on April 27, 2022; (b) Petitioner was "removable as charged" and ordered "removed from the United States"; and (c) under the conditions of the VWP, Petitioner "waived any right to contest, other than on the basis of an application for asylum, any action for [his] removal." (Harris Decl., Dkt. 6-1, ¶ 12.)

On August 20, 2026, Petitioner's counsel filed a Motion for Bond and Custody Determination ("Original Bond Motion") with the Executive Office for Immigration Review ("EOIR"). (*Id.* ¶ 15.) At the time, Petitioner was detained at the Delaney Hall Detention Facility ("Delaney") in Newark, NJ, but, on August 24, 2026, he was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (*Id.* ¶¶ 14, 16.) As a result, the immigration judge at the New Jersey immigration court did not call the case on August 26, 2026 and dismissed the Original Bond Motion as moot because Petitioner was no longer in custody at Delaney. (*Id.* ¶ 17.) That same day, after the Original Bond Motion was dismissed as moot, Petitioner's counsel filed another Motion for Bond and Custody Determination ("Renewed Bond Motion") with EOIR. (*Id.* ¶ 18.)

On September 1, 2026, an immigration judge in the immigration court located on Varick Street in New York, New York ("IJ") conducted a hearing on Petitioner's Renewed Bond Motion. (*Id.* ¶ 19.) At the hearing, the IJ denied bond to Petitioner and ordered Petitioner to remain detained after finding that Petitioner presented a flight risk and that no amount of bond could mitigate this risk.[4] (*Id.*) In memorializing that decision, the IJ wrote in his Order denying bond that (1) "[Petitioner] has a vague, generalized claim of fear of harm on account of his religion if he were to be returned to Taiwan, an undeveloped claim that does not inure to his benefit in the flight risk analysis"; (2) "[Petitioner] faces a hurdle in the one year bar to asylum, should he ultimately end up applying for that relief"; (3) "[i]t is unclear whether he has employment to which to return and has provided no proof of eligibility to work lawfully in the United States"; (4) "[Petitioner] has no other family members in the United States, other than [a] girlfriend, whom he intends to marry at

[4] The IJ did not find that Petitioner was a danger to the community and thus the bond denial was based solely on the IJ's flight-risk finding. (*See* Order of Immigration Judge, Dkt. 1-1, at 1.)

some point"; (5) "[Petitioner's] sponsor's [legal permanent resident] card expired in 2022, and there's no evidence related to the renewal of that card"; and (6) "the sponsor's financials demonstrate an income that would not be able to support Respondent plus sponsor's existing family of three additional household members." (Order of Immigration Judge, Dkt. 1-1, at 1–2.) The IJ summarized his decision as follows:

> Accordingly, because [Petitioner] has failed to establish that he has a viable sponsor with lawful status who can economically support him, his relief is speculative, and he has no other family members or employment, he has failed to establish that he is not a flight risk in the United States. Alternatives to detention were considered, but these alternatives are appropriate where Respondent demonstrates the baseline requirements for release on bond, which he has failed to do here (viable sponsor, viable relief).

(*Id.* (citation omitted).) Nothing in the record—including Petitioner's submissions, the IJ's Order, and Respondents' declaration—suggests that Respondents presented any evidence or argument to the IJ to support a finding that Petitioner is a flight risk.

On September 2, 2026, subsequent to his expressing a fear of return to his home country, Petitioner was served with a Form I-863 Notice of Referral to an Immigration Judge "Form I-863"). (Harris Decl., Dkt. 6-1, ¶ 20.) The next day, September 3, 2026, Petitioner's Form I-863 was filed with EOIR, initiating Petitioner's asylum-only proceedings. (*Id.* ¶ 21.) Petitioner's next hearing date in immigration court is September 21, 2026. (*Id.* ¶ 24.) As of today, Petitioner remains in detention at MDC. (*Id.* ¶ 24.) Respondents contend that Petitioner's detention is governed by 8 U.S.C. § 1231 ("Section 1231"), which makes detention mandatory. (Resp. O.S.C., Dkt. 6, at 1.)

## DISCUSSION

Petitioner challenges the legality of his detention, which raises two issues: (1) which statutory authority governs his detention—Section 1231 or 8 U.S.C. § 1226(a) ("Section

1226(a)")—and (2) if he is detained pursuant to Section 1226(a), whether the bond hearing at which he bore the burden of proving he is not a flight risk violated his due process rights such that his detention pursuant to Section 1226(a) is unlawful.

**I. Section 1226(a) Governs Petitioner's Detention**

Though Respondents contend that Petitioner's detention is governed by Section 1231 because he is a VWP participant served with a purportedly final order of removal, they concede that "the Court's decision in *Chery v. Maldonado*"—in which the Court found under materially similar circumstances that Section 1226(a), and not Section 1231, governed petitioner's detention—"would likely control the outcome of the instant matter." (Resp. O.S.C., Dkt. 6, at 1 (citing *Chery v. Maldonado*, No. 26-CV-4667 (PKC), 2026 WL 2566434 (E.D.N.Y. Aug. 31, 2026).) The Court agrees; Petitioner's detention is governed by Section 1226(a).

Section 1226(a) provides that noncitizens "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[T]he discretionary authority in [Section] 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) ("[I]t is clear that [Section] 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance."). On the other hand, Section 1231 governs detention of noncitizens who have been ordered removed. 8 U.S.C § 1231(a)(1)(A). Subsection (a)(2) requires detention of noncitizens during the removal period, which normally begins on the date the removal order becomes administratively final. *Id.* § 1231(a)(2). Thus, the lawfulness of Petitioner's detention hinges on

whether the August 10, 2026 FARO, (*see* Dkt. 6-1, at ECF[5] 10), is administratively final for the purposes of Section 1231. The Court finds it is not.

In *Johnson v. Guzman Chavez*, the Supreme Court explained that a removal order is administratively final when there are no further agency review proceedings to determine removability, and DHS is free to execute the removal order absent a judicial stay. 594 U.S. 523, 534–35 (2021). While Petitioner's FARO purports to be administratively final, it also states that DHS will not proceed with removal while an application for asylum, withholding, or deferral of removal is pending. (*See* Dkt. 6-1, at ECF 10.) Likewise, DHS policy provides that after a noncitizen like Petitioner is referred to an immigration judge for asylum proceedings, "the order cannot be acted upon unless the [immigration judge] denies the claim and any appeals to the Board of Immigration Appeals and federal courts, if a stay of removal is in effect, are exhausted." U.S. Immigration and Customs Enforcement, *Policy Number 11070.1: Visa Waiver Program Removals* 10 (2016), https://www.ice.gov/doclib/foia/policy/directive11070.1.pdf [https://perma.cc/GBA6-BMQ4]. Therefore, it logically follows that where asylum-only proceedings are ongoing, DHS policy bars removal and the agency review process is not complete. Accordingly, the August 10, 2026 FARO is not administratively final. *See Chery*, 2026 WL 2566434, at *3 (holding the same and collecting cases from "five districts [that] have reached the same conclusion in similar circumstances, [each] holding that where asylum-only proceedings are pending, a VWP participant is not subject to a FARO and thus cannot be detained pursuant to Section 1231").

Here, Petitioner is in the midst of asylum-only proceedings in front of an immigration judge, (*see* Harris Decl., Dkt. 6-1, ¶¶ 21–24), so his order of removal is not administratively final,

---

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

and has not been so since his referral to the asylum-only proceedings on September 2, 2026, (*id.*). Because the asylum-only immigration proceedings to determine Petitioner's removability are ongoing, he is not subject to an administratively final removal order, and accordingly Section 1231 does not govern his detention. *See, e.g.*, *Molina Lara v. Genalo*, 832 F. Supp. 3d 176, 181 n.7 (E.D.N.Y. 2026). Rather, he is "detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). Accordingly, his detention is governed by Section 1226(a).

As noted above, Respondents do not contest that the same reasoning relevant in *Chery* applies here to find that Petitioner's detention is not governed by Section 1231. (*See* Resp. O.S.C., Dkt. 6, at 1, 3.) Instead, Respondents attempt to distinguish this case from *Chery* because, here, Petitioner has received a bond hearing. (*Id.* at 3–4.) But this distinction, though accurate, is irrelevant to the question of which statutory authority governs Petitioner's detention. Instead, it raises an additional issue not presented in *Chery*:[6] whether Petitioner's bond hearing was constitutionally adequate such that his detention pursuant to *Section 1226(a)* is lawful.[7]

## II. Petitioner Having to Bear the Burden to Demonstrate a Lack of Flight Risk at the Bond Hearing Violated His Due Process Rights

Petitioner brings only one claim in his Petition: that the bond hearing he received in front of the IJ violated his Fifth Amendment due process rights in so far as the IJ placed the burden on him, not Respondents, to demonstrate that he is *not* a flight risk. (Pet., Dkt. 1, ¶¶ 31–40.) The fact

[6] In *Chery*, the petitioner was never afforded any bond hearing in front of an immigration judge, so the Court found that his detention pursuant to Section 1226(a) was unlawful. *See* 2026 WL 2566434, at *4.

[7] There is an additional issue of whether a bond hearing must take place *after* Petitioner is referred to asylum-only proceedings to satisfy the requirements under Section 1226(a), but Petitioner has not raised that argument and the Court declines to answer it today since the bond hearing that Petitioner did receive was inadequate in any event.

that the IJ placed the burden on Petitioner at the hearing is not disputed, so the only question is whether that burden-shifting framework was improper; the Court finds that it is.

Section 1226(a) provides that an alien "may be arrested and detained pending a decision on whether the alien is to be removed from the United States," or, alternatively, may be released on bond or conditional parole. 8 U.S.C. §§ 1226(a)(1)–(2). "To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson*, 594 U.S. at 527 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)). If detained, a noncitizen may seek review of an initial custody determination by requesting a bond hearing, during which an immigration judge will assess the noncitizen's potential risk of flight and danger to the community. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d). Assessing who bears the burden at such a hearing—the detainee or the government—is driven by due process considerations. Accordingly, the Court looks to the Second Circuit's application of *Mathews v. Eldridge*'s three-factor balancing test in *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). In deciding whether petitioner Velasco Lopez's detention under Section 1226(a) violated his due process rights, the Second Circuit considered the three factors set forth in *Mathews*:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Id.* at 851 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As to the first factor, Petitioner's affected private interest "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, Petitioner has been deprived of his liberty interests for over a month since his detention began on August 10, 2026. "While longer detentions are an even

more pressing private interest, nearly a month's deprivation of one's liberty remains compelling, especially when compared to a non-liberty private interest, like the loss of government benefits." *Eltayeb v. Genalo*, No. 26-CV-6090 (VEC), 2026 WL 2364647, at *3 (S.D.N.Y. Aug. 14, 2026). This factor weighs strongly in Petitioner's favor.

Meanwhile, as to the second factor, there is a high risk of erroneous deprivation of Petitioner's liberty interest in this case as a result of the burden having been placed on Petitioner to prove at the bond hearing that he is *not* a flight risk. "Procedural due process rules are shaped by the risk of error inherent in the truth-finding process," *Velasco Lopez*, 978 F.3d at 852, and there are inherent risks to the truth-finding process that result from placing the burden on the noncitizen under these circumstances. First, "proving a negative . . . can often be more difficult than proving a cause for concern. Requiring that detainees . . . prove that they are *not* a danger and *not* a flight risk—after the government has enjoyed a presumption that detention is necessary—presents too great a risk of an erroneous deprivation of liberty." *Black v. Decker*, 103 F.4th 133, 156 (2d Cir. 2024). Second, owing to their confinement, "detainees are disadvantaged by a lack of information when the burden is placed upon them to prove that they are not dangerous or a flight risk," *Singh v. Francis*, No. 26-CV-0344 (OEM), 2026 WL 507890, at *5 (E.D.N.Y. Feb. 24, 2026), while, conversely, "the Government ha[s] substantial resources to deploy" in this context. *Velasco Lopez*, 978 F.3d at 852.

Those risks to the truth-finding process were borne out here where it is not clear that, had Respondents been forced to bear the burden, they would have been prepared to present much, if any, credible evidence that Petitioner presents a risk of flight. ICE's initial custody determination form indicates that the ICE officers initially judged Petitioner to be a flight risk due to the following factors: (1) Petitioner "overstayed his legal period of admission," (2) he "does not have any

applications [for lawful status] pending," (3) he "failed to alert ICE of his current address," (4) he "has addresses in [two] different states," (5) he "does not have a wife or child in the US," and (6) he "works illegally," and "does not have steady employment." (Dkt. 6-1, at ECF 27.) But these factors are each improper or, at best, weak indicators of an individual being a flight risk.

For example, courts have consistently recognized that a lack of legal immigration status and/or a lack of pending applications for legal status are improper considerations when evaluating flight risk. *See, e.g.*, *Pastrana-Beltran v. Mullin*, No. 26-CV-2657 (RER), 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) ("The problem is that a per se determination of this sort—on his [immigration] status alone, rather than any assessment of the factors listed on the form—comports not with 1226(a), but with Respondents' desired policy of mandatory detention under 1225(b)(2)(A) for any noncitizens who entered the U.S. without inspection however long ago."); *Inestroza Carbajal v. Frazier*, No. 26-CV-2778 (SJB), 2026 WL 1309265, at *4 (E.D.N.Y. May 12, 2026) ("[M]ere lack of status does not present a per se risk of flight."). Similarly, Petitioner "work[ing] illegally" owing to his lack of legal status is an improper consideration with respect to flight risk. *See, e.g.*, *Curimilma Quille v. Blanche*, No. 26-CV-2818 (HG), 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026). As the court explained in *Curimilma Quille*, "[h]ere, the only basis the government has to characterize Petitioner's employment as 'unlawful' is the fact that he entered the United States without inspection. That definition is untenable for purposes of Section 1226(a) because it would apply to any noncitizen who entered the United States without inspection and later found stable employment. This sort of generic finding is incompatible with the individualized custody determination that Section 1226(a) requires." *Id.* Meanwhile, even though a lack of ties to a spouse or child in the United States might be an appropriate consideration in assessing flight risk, it is far from a strong indicator; to conclude otherwise would suggest that unmarried and

childless individuals are substantially more deserving of detention. Instead, a more appropriate view of this factor is that having a spouse or children weighs *against* a flight-risk finding, while a lack of those familial ties is a *non*-factor.[8] As a whole, none of the flight risk factors ICE initially relied on would have been strong evidence of a risk of flight if Respondents had been compelled to bear the burden at the bond hearing. Thus, the IJ placing the burden on Petitioner to prove that he is not a flight risk likely led to an inaccurate finding on that issue.

Moreover, at a constitutionally compliant bond hearing, the immigration judge should consider alternatives to detention that would mitigate any risk of flight. *See D.C. v. Noem*, 825 F.Supp.3d 309, 326 (S.D.N.Y. 2026) (explaining that the "heavy weight of recent case law" instructs that immigration judges must consider alternatives to detention when evaluating whether the petitioner is eligible for bond).[9] Instead, the IJ placed the burden on Petitioner to show he was not a flight risk, and having found that Petitioner had not met this burden, the IJ did not consider any alternatives to detention. (Order of Immigration Judge, Dkt. 1-1, at 2.)[10] But "failing to consider whether alternatives to detention may ameliorate any danger posed by [the petitioner's]

[8] Furthermore, to the extent relevant, as the IJ noted in his Order, Petitioner has a "girlfriend, whom he intends to marry at some point." (Order of Immigration Judge, Dkt. 1-1, at 1.)

[9] In fact, in *D.C.*, "Respondents acknowledge[d] that *Black* [*v. Decker*] supports an [immigration judge's] consideration of alternatives to detention with respect to flight risk," and instead argued (unsuccessfully) that such consideration was only unnecessary with respect to a finding of dangerousness. *See* 825 F.Supp.3d at 325.

[10] The IJ's Order claims without further elaboration that "[a]lternatives to detention were considered," but it also explains that "these alternatives are appropriate where Respondent demonstrates the baseline requirements for release on bond, which he has failed to do here." (Order of Immigration Judge, Dkt. 1-1, at 2.) The Court is therefore left with the understanding that, even if the idea of alternatives to detention was contemplated in the abstract, the IJ did not seriously consider any actual alternatives, having summarily decided that none would be "appropriate."

release creates a significant risk that he will be erroneously deprived of his liberty interest." *Cantor v. Freden*, 761 F. Supp. 3d 630, 637 (W.D.N.Y. 2025). Accordingly, this factor also weighs in Petitioner's favor.

The final factor is Respondents' interests, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In this context, those interests are "ensuring that noncitizens do not abscond and ensuring they do not commit crimes" while on bond. *Velasco Lopez*, 978 F.3d at 854 (citation modified). "However, the Government [does not have] an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. On the contrary, shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* If Petitioner is in reality a flight risk, then in a properly conducted hearing Respondents would have had—and still have—the opportunity to demonstrate that fact to an immigration judge. Whereas placing the burden on Respondents neither precludes nor hampers their ability to detain individuals who are actually flight risks and/or dangerous. Nor is conducting constitutionally compliant bond hearings likely "to impose an undue administrative or financial burden on the Government, because the Government 'is generally in a better position than a detained noncitizen to gather and present evidence relevant to the bond determination.'" *Mathieu v. Dep't of Homeland Sec.*, No. 26-CV-4630 (PAE), 2026 WL 1747084, at *5 (S.D.N.Y. June 17, 2026) (citation omitted). Thus, this factor too weighs in Petitioner's favor.

"Numerous courts in [the Southern] District have held that 'where, as here, [Respondents] seek[ ] to detain a noncitizen pending removal pursuant to [Section] 1226(a), the Fifth Amendment Due Process Clause requires [Respondents] to bear the burden of proving, by clear and convincing

evidence, that such detention is justified." *J.C.G. v. Genalo*, No. 24-CV-8755 (JLR), 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (citation omitted) (collecting cases); *see also Quintanilla v. Decker*, No. 21-CV-0417 (GBD), 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (recognizing that the "overwhelming consensus of judges in [the Southern District have] conclude[ed] that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention"). There is no reason to depart from that practice in this District, as a number of judges in this District have already found. *See Bohorquez v. Mullin*, No. 26-CV-2053 (AMD), 2026 WL 1693948, at *5 (E.D.N.Y. June 11, 2026) (holding that "a noncitizen detained pursuant to [Section] 1226(a) is entitled to a bond hearing where the government has the burden to show by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk" (citation omitted)); *Lupercio v. Genalo*, No. 26-CV-5321 (OEM), 2026 WL 2666844, at *4 (E.D.N.Y. Sep. 10, 2026) (holding that petitioner's due process rights were violated where immigration judge improperly placed the burden on petitioner to prove at the bond hearing that he was not a flight risk or danger to the community); *Mendoza Raymundo v. Almodovar*, No. 26-CV-2304 (HG), 2026 WL 1480372, at *3 (E.D.N.Y. May 27, 2026) (same).[11]

**III. Remedy**

A writ of habeas corpus "is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693

---

[11] In its Order to Show Cause, the Court expressly ordered Respondents to address the issue of whether the burden placed on Petitioner violated his due process rights—the single claim asserted in the Petition. (O.S.C., Dkt. 4, at 1–2.) In fact, the Court even directed Respondents to much of the case law cited in the above paragraph. (*See id.*) Nonetheless, Respondents entirely failed to address the issue or any of the Court's cited case law when responding to the Order to Show Cause. (*See generally* Resp. O.S.C., Dkt. 6.) Accordingly, Respondents have waived any arguments to the contrary, and there are no counterarguments for the Court to address.

(2008) (citations omitted); *see also Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025) ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." (collecting cases ordering same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no relief short of petitioner's immediate release would be appropriate or sufficient" in light of the constitutional violations suffered). Here, as discussed above, Petitioner's due process rights have been violated as a result of his detention without a constitutionally adequate bond hearing. Accordingly, the Court finds it appropriate and necessary to order Petitioner's immediate release. *See Kumar v. Maldonado*, No. 26-CV-5326 (NRM), 2026 WL 2606756, at *6 (E.D.N.Y. Sep. 3, 2026) (ordering release where petitioner's due process rights were violated as a result of bond hearing where the burden was improperly placed on petitioner).

However, the Court will grant Respondents the opportunity to make a showing as to risk of flight should they believe they can make such a showing. In that event, Respondents can request that the Court hold a bond hearing at which they will bear the burden of proving he is a flight risk and the Court will consider alternatives to detention. *See J.R.U. v. Genalo*, No. 26-CV-4332 (LJL), 2026 WL 1864975, at *18 (S.D.N.Y. June 29, 2026) (granting petition due to inadequate bond hearing but allowing the government the opportunity to present to the court evidence and argument to support petitioner's continued detention since the government had not explicitly conceded that it could not prove petitioner was a flight risk); *cf. Sosa v. Warden of Orange Cnty. Corr.*, No. 26-CV-2304 (DEH), 2026 WL 1803814, at *8 (S.D.N.Y. June 23, 2026) (ordering release where, "having twice conceded that [petitioner] is not a danger to the community or a flight risk, the

Government could not possibly carry its burden at a bond hearing to show that continued detention is warranted").

## CONCLUSION

For the foregoing reasons, Meng Han Tsai's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Pet., Dkt. 1), is GRANTED.

Respondents are hereby ORDERED to release Meng Han Tsai immediately, and no later than September 16, 2026, at 5:00 p.m. ET, unless Respondents file a motion with the Court no later than September 16, 2026, at 11:00 a.m. ET requesting a bond hearing. If Respondents make such a request, the Court will hold the bond hearing at 10:00 a.m. ET on September 17, 2026 in Courtroom 4F North. Otherwise, Respondents shall release Petitioner subject to the conditions under which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket by 12:00 p.m. ET on September 17, 2026.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies lawful detention. The Court retains

jurisdiction to review any subsequent arrest or detention of Petitioner by Respondents to ensure compliance with this Memorandum and Order.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 15, 2026
Brooklyn, New York